Walter A. Tormasi, #136062/268030C
New Jersey State Prison
Second & Cass Streets
P.O. Box 861
Trenton, New Jersey 08625-0861
Attorney for Plaintiff (Appearing Pro Se)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | | |
|---|---|---|
| WALTER A. TORMASI, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: |
| | : | |
| [1] MARCUS O. HICKS, New Jersey | : | |
| Department of Corrections (DOC) | : | |
| Commissioner; [2] JOHN FALVEY, | : | COMPLAINT (featuring |
| DOC Assistant Director of Legal | : | CERTIFICATION OF ENTIRE |
| Affairs; [3] JONATHAN GRAMP, | : | CONTROVERSY, DEMAND FOR JURY |
| New Jersey State Prison (NJSP) | : | TRIAL, and VERIFICATION) |
| Administrator; [4] RAYMOND | : | |
| ROYCE, NJSP Administrator; [5] | : | |
| DAVID RICHARDS, NJSP Associate | : | |
| Administrator; [6] AMY EMRICH, | : | |
| NJSP Assistant Superintendent; | : | |
| [7] FATHOM BORG, NJSP Legal | : | |
| Liaison; [8] IMAM JAMAL | : | |
| EL-CHEBLI, NJSP Chaplaincy | : | |
| Supervisor; [9] RABBI YEHUDA | : | |
| SPRITZER, NJSP Chaplain; [10] | : | |
| REV. DR. VICTOR M. LEE, | : | |
| Religious Issues Committee | : | |
| (RIC) Chairman; [11] WILLIE | : | |
| BONDS, RIC Member; [12] MERVIN | : | |

1

GANESH, RIC Member; [13] MAJOR      :
KELLER, RIC Member; [14] REV.       :
DR. JOY LYNCH, RIC Member; [15]     :
REV. ESTHER MAURICE, RIC            :
Member; [16] ELEAZAR SPRATLEY,      :
RIC Member; [17] FATHER DR.         :
LONGINUS UGWUEGBULEM, RIC           :
Member; and [18] IMAM ANWAR         :
WRIGHT, RIC Member,                 :
                                    :
        Defendants.                 :
_____:

        Plaintiff Walter A. Tormasi, residing at New Jersey State

Prison, Second & Cass Streets, P.O. Box 861, Trenton, New

Jersey 08625-0861, complains against Defendants herein,

stating, under penalty of perjury, as follows:

                            INTRODUCTION

        1.    The present civil action alleges the violation of

Plaintiff's right to religious freedom (Count I) and equal

protection (Count II), as guaranteed by the First and Fourteenth

Amendments to the United States Constitution (enforceable

through 42 U.S.C. § 1983); as guaranteed by the Religious Land

Use and Institutionalized Persons Act (enforceable through 42

U.S.C. § 2000cc-2); and as guaranteed by Article I, Paragraphs

1 and 3, of the New Jersey Constitution (enforceable through

N.J. Stat. Ann. § 10:6-2d and 28 U.S.C. § 1367(a)).

        2.    The cause of action arose during Plaintiff's

incarceration at New Jersey State Prison in Trenton.  Defendants

were State employees who were personally involved in violating

1   Plaintiff's constitutional and statutory rights.

2      3.   As discussed below, Plaintiff, who practices Judaism,

3   sought to sanctify his living quarters with fragrance-infused

4   anointment oils. Such oils are not available from within

5   Plaintiff's prison facility. Plaintiff therefore requested

6   permission to purchase religious anointment oils from an outside

7   source. Defendants denied that request and thereby prevented

8   Plaintiff from practicing his anointment ritual.

9      4.   Regarding his free-exercise and RLUIPA claims (Count

10   I), Plaintiff alleges that his Jewish beliefs are sincerely held

11   and that his need for anointment oils sprang from his

12   interpretation of Jewish Scripture, thus cloaking Plaintiff with

13   religious protection. Plaintiff also alleges that the denial

14   of anointment oils by Defendants unreasonably and unjustifiably

15   restricted his chosen method of religious practice.

16      5.   Regarding his equal-protection claim (Count II),

17   Plaintiff alleges that Defendants subjected him to

18   unconstitutional disparate treatment. This is because

19   Defendants allowed at least one other Jewish inmate to purchase

20   religious oils from an outside source. Defendants, in other

21   words, treated Plaintiff differently from similarly situated

22   individuals seeking to exercise their religious rights.

23      6.   To remedy the foregoing constitutional and statutory

24   violations, Plaintiff seeks the full measure of damages,

1   including punitive damages stemming from the reckless or callous

2   indifference to Plaintiff's rights.  Plaintiff also seeks an

3   injunction mandating that Defendants allow him to purchase

4   religious anointment oils from an outside source.

5                   JURISDICTION, VENUE, AND VICINAGE

6       7.   This Court has jurisdiction over Plaintiff's federal

7   claims under 28 U.S.C. §§ 1331, 1343(a)(4), and 2000cc-2.

8       8.   This Court has jurisdiction over Plaintiff's

9   associated state-law claims under 28 U.S.C. § 1367(a).

10      9.   All acts complained of herein occurred within the

11  District of New Jersey, Trenton Vicinage, making that venue and

12  vicinage entirely proper (see 28 U.S.C. § 1391(b)(2)).

13                              PARTIES

14      10.  During the cause of action, Plaintiff Walter A.

15  Tormasi was in the custody of the New Jersey Department of

16  Corrections (DOC) and was confined at New Jersey State Prison

17  (NJSP) located at Second and Cass Streets in Trenton.

18      11.  At all times mentioned herein, Defendants were

19  employed by the State of New Jersey and had implemented and/or

20  executed State functions (i.e., acted under color of law).

21      12.  During the cause of action, Defendant Marcus O. Hicks

22  was the Commissioner of DOC, served as its Chief Executive

23  Officer (see N.J. Stat. Ann. § 30:1B-4), and was required to

24  adopt and implement "rules and regulations"; to determine "all

                                  4

matters of policy"; to "correct and adjust the same"; and to perform "such other functions as may be prescribed . . . by any other law" (see N.J. Stat. Ann. §§ 30:1B-6e, -6g, and -6q).

13. During the cause of action, Defendant John Falvey was the DOC Assistant Director of Legal Affairs and was responsible for directing DOC employees on legal and policy issues, including issues involving religious practices.

14. During the cause of action, Defendants Jonathan Gramp and Raymond Royce were NJSP Administrators and were responsible for "the proper conduct and management of the institution," "the conduct of all employees," and "the care and treatment of the inmates," said responsibilities to be discharged by them "according to law and the rules and regulations of the institution" (see N.J. Stat. Ann. §§ 30:4-4, -5, and -6).

15. During the cause of action, Defendant David Richards was an NJSP Associate Administrator and was responsible for, among other things, assisting with the management and administration of NJSP regarding religious and other matters.

16. During the cause of action, Defendant Amy Emrich was an NJSP Assistant Superintendent and was responsible for, among other things, assisting with the management and administration of NJSP regarding religious and other matters.

17. During the cause of action, Defendant Fathom Borg was an NJSP Legal Liaison and was responsible for, among other

1   things, coordinating legal matters between inmates and staff and

2   redressing religious issues involving NJSP inmates.

3       18.   During the cause of action, Defendant Imam Jamal

4   El-Chebli was an NJSP Chaplaincy Supervisor and was responsible

5   for, among other things, "coordinating and supervising the

6   religious activities of the correctional facility/unit and

7   ensuring that [governing religious] requirements . . . are

8   fulfilled" (see N.J. Admin. Code § 10A:17-6.3(a)).

9       19.   During the cause of action, Defendant Rabbi Yehuda

10  Spritzer was an NJSP Chaplain and was responsible for "serving

11  as liaison between correctional facility[] authorities [and] the

12  inmates whose faiths are not represented in the correctional

13  facility" (see N.J. Admin. Code § 10A:17-6.4(a)(2)).

14      20.   During the cause of action, Defendants Dr. Victor M.

15  Lee, Willie Bonds, Mervin Ganesh, Melinda Haley, Major Keller

16  (first name unknown), Rev. Dr. Joy Lynch, Rev. Esther Maurice,

17  Eleazar Spratley, Father Dr. Longinus Ugwuegbulem, and Imam

18  Anwar Wright were members of the DOC Religious Issues Committee

19  (RIC) and were responsible for honoring "freedom of religion"

20  and "religious rights"; "reviewing any restrictions thereof to

21  ensure that any such restrictions are reasonable and related to

22  penological interests"; adjudicating "appeals submitted by

23  inmates in regard to religious matters" and making "final

24  [administrative] decision[s]"; reviewing "any other

6

considerations or situations pertinent to religious issues"; and "address[ing] and compl[ying] with provisions of State and Federal laws regarding religious issues" (see N.J. Admin. Code §§ 10A:17-6.6(c)(1), -6.6(c)(2), -6.6(c)(4), and -6.6(c)(5)).

21.   In addition to having the above responsibilities, Defendants were required to: (1) follow the laws of the United States, including the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act; (2) follow the laws of New Jersey, including Article I of the New Jersey Constitution; and (3) take remedial action to minimize or eliminate the harm caused by the violation of said laws.

22.   Plaintiff sues Defendants in their individual capacity for damages and their official capacity for injunctive relief.

FACTUAL BACKGROUND

23.   Plaintiff is actively, sincerely, and faithfully engaged in Jewish worship.  However, for religious and philosophical reasons, Plaintiff is not affiliated with the Orthodox, Conservative, or Reform sects of Judaism.  Plaintiff is, instead, independently engaged in Jewish self-practice.

24.   The Jewish Bible is the Torah.  It forms the foundation of Judaism.  Just like Christians must follow the Holy Bible, and just like Muslims must follow the Koran, Plaintiff is beholden to the Torah.  Plaintiff sincerely believes, as do all faithful Jews, that the Torah is the law of

1   God as revealed to Moses and as recorded in the first five books

2   of the Hebrew Scriptures (said scriptural books consisting of

3   Genesis, Exodus, Leviticus, Numbers, and Deuteronomy).

4        25.   Plaintiff is deeply committed to Judaism.   For

5   example, as required under Jewish law, Plaintiff eats kosher

6   foods, observes the Sabbath, engages in daily prayers, undergoes

7   fasting, and celebrates all major Jewish holidays, including

8   Rosh Hashanah, Passover, Yom Kippur, and Hanukkah.   Plaintiff

9   also studies the Torah for about one hour per day, with his

10  total biblical studies amounting to several thousand hours.   In

11  addition, over the last few years, Plaintiff has read many

12  books, treatises, commentaries, and other publications regarding

13  Jewish theology.   In short, Plaintiff is deeply committed to

14  Judaism and acts in conformity with that commitment.

15       26.   Judaism has numerous commandments.   Those commandments

16  are outlined in the Torah.   Of particular relevance, one

17  commandment relates to the anointment of God's Tent of Meeting.

18       27.   Specifically, in the Book of Exodus, God commanded his

19  prophet, Moses, to gather "choice spices," including "fragrant

20  cinnamon," in order to make "oil of sacred anointment" by using

21  the process of "compound[ing]" and "perfum[ing]" (Exhibit A

22  (Exodus 30:22-25)).   God commanded Moses to utilize the

23  fragrance-infused oils to "anoint the Tent of Meeting" and "all

24  its utensils," thereby "sanctify[ing]" such items and making

"holy" whoever "touches them" (Exhibit A (Exodus 30:26-29)).

28.   Relying on his interpretation of the foregoing Jewish scripture, Plaintiff sought from prison officials "permission to purchase, from an outside source, fragrance-infused religious anointment oils" (Exhibit B, at page 1).   Plaintiff's written request, dated March 29, 2021, explained as follows:

> I believe that the above Torah verses [i.e., Exodus 30:22-29] apply directly to my situation.  I believe, in particular, that my prison cell functions as God's Tent of Meeting.  I hold this belief because my cell is where I worship and where God meets with me.  I also hold this belief because my cell, like the Tent of Meeting described in the Torah, is my temporary abode (place of rest) pending my eventual release from custody/enslavement.
>
> In addition to believing that my cell serves as God's Tent of Meeting, I believe that I am obligated to perform the anointment process originally entrusted to Moses.  This belief is based on my interpretation of the Torah.  Pursuant to Jewish scripture, I believe that I descended from Abraham/Moses.  I also believe that I must follow God's commandments (including the anointment commandment), even if those commandments were issued to others within prior generations, such as Moses.
>
> Given the above construction, I sincerely believe that I must anoint my prison cell and its utensils/furnishings with sacred oils, doing so at least daily.  The current request is directed at exercising this sincerely held religious belief.
>
> Obviously, my daily anointment routine will require large quantities of oil.  My prison cell measures 5 feet wide, 8 feet

9

long, and 7 feet high.  In total, my walls and ceiling feature over 200 square feet of surface area.  Because I intend to sanctify those surfaces (as well as the surfaces of all utensils/furnishings), I need to purchase 64 ounces of anointment oils per month to cover my estimated daily consumption.

Although New Jersey State Prison offers religious oils through its commissary program, those oils do not meet the standards outlined in the Torah.  For one thing, the oils on commissary are generic "prayer oils," which are designed to be applied to human flesh during worship.  Anointment oils, in contrast, are intended to sanctify inanimate objects (i.e., God's Tent of Meeting and its utensils/furnishings) and, according to the Torah, "shall not be smeared on human flesh" (Exodus 30:32 [Exhibit A]).  Moreover, anointment oils must contain certain "choice spices" and be specially blended/perfumed to have sanctifying characteristics (Exodus 30:22-25 [Exhibit A]).  Because the oils sold on commissary do not meet these important religious standards, I must obtain my anointment oils from an external supplier.

I respectfully request that my religious needs be accommodated.  Specifically, in accordance with my sincerely held Jewish beliefs, I request permission to purchase, from an outside source, 64 ounces per month of fragrance-infused anointment oils.  Please approve this request as soon as possible.

29.  Plaintiff incorporates and repeats all paragraphs of his above-quoted letter (Exhibit B) as though such paragraphs were set forth as freestanding factual allegations.

30.  Plaintiff mailed his above-quoted letter to the DOC Religious Issues Committee and to Defendants Marcus O. Hicks, John Falvey, Jonathan Gramp, David Richards, Amy Emrich, Fathom

Borg, Imam Jamal El-Chebli, Rabbi Yehuda Spritzer, Rev. Dr. Victor M. Lee, Willie Bonds, Mervin Ganesh, Milinda Haley, Major Keller, Rev. Joy Lynch, Rev. Esther Maurice, Eleazar Spratley, Father Dr. Longinus Ugwuegbulem, and Imam Anwar Wright.

31.  Plaintiff's mailing of his above-quoted letter to said Defendants is memorialized by the attached Postage Remits (Exhibit C), all of which were signed/approved by prison staff.

32.  To date, Defendants failed to grant Plaintiff permission to purchase anointment oils from an outside source, thereby preventing Plaintiff from anointing God's Tent of Meeting (his prison cell) and its utensils/furnishings.

33.  During the cause of action, Defendants permitted at least one other Jewish inmate at NJSP (namely, Zion'Eliyah Yah'Torah, SBI No. 440122B) to purchase religious oils from an outside source.  In his above-quoted letter, dated March 29, 2021, Plaintiff "insist[ed] on equal treatment[] and . . . object[ed] to any discriminatory barriers preventing [him] from performing [his] anointment ritual" (Exhibit B, at page 3).

34.  In refusing to allow Plaintiff to purchase anointment oils from an outside source, Defendants did not dispute that Plaintiff's religious beliefs were sincerely held or that his need for anointment oils sprang from his interpretation of Jewish Scripture (see Exhibits F, H, I, and J).  Nor did Defendants dispute that they discriminated against Plaintiff by

allowing another Jewish inmate to purchase religious oils from

an outside source (see Exhibits F, H, I, and J).

35.  Notably, in their decisions denying Plaintiff's

request, Defendants insisted that Plaintiff purchase oils from

NJSP's commissary (see Exhibits F, H, I, and J).  Plaintiff

responded (see Exhibit I), explaining:  "For the reasons stated

in my memorandum dated March 29, 2021, the prayer oils on

commissary do not meet my religious standards.  That is why I

requested to purchase anointment oils from an outside source."

36.  Thus, given Plaintiff's above-quoted response (Exhibit

I) and his letter dated March 29, 2021 (Exhibit B), said letter

attached to Plaintiff's numerous inquiries/grievances (Exhibits

D, F, G, and I), Defendants knew that the religious oils offered

on NJSP's commissary were religiously inadequate.

37.  Moreover, given this Court's rejection of qualified

immunity in an oils-related lawsuit, as well as this Court's

issuance of an injunction requiring DOC/NJSP officials to allow

another Jewish inmate to purchase religious oils from an outside

source (see Exhibits K and L), Defendants knew that their

conduct violated Plaintiff's clearly established rights.

38.  Plaintiff suffered injury, as well as an undue

burden, through the actions or inactions of Defendants.  This is

because Plaintiff was, and continues to be, prevented from

anointing God's Tent of Meeting (his prison cell) and its

1  utensils/furnishings, as mandated by the Torah.

2      39.   Before bringing suit against Defendants, Plaintiff

3  exhausted all administrative remedies extended to him (see

4  Exhibits D, E, F, G, H, I, and J), with his final-level appeal

5  being denied by Defendant Raymond Royce (see Exhibit I).

6              COUNT I - VIOLATION OF FREEDOM OF RELIGION

7      40.   Through their actions or inactions, Defendants

8  prevented Plaintiff from receiving anointment oils, violating

9  Plaintiff's right to religious freedom, as guaranteed by the

10 First Amendment to the United States Constitution (enforceable

11 through 42 U.S.C. § 1983); as guaranteed by the Religious Land

12 Use and Institutionalized Persons Act (enforceable through 42

13 U.S.C. § 2000cc-2); and as guaranteed by Article I, Paragraph

14 3, of the New Jersey Constitution (enforceable through N.J.

15 Stat. Ann. § 10:6-2d and 28 U.S.C. § 1367(a)).

16     41.   In violating Plaintiff's rights in the manner alleged,

17 Defendants acted with reckless or callous indifference, thus

18 exposing Defendants to individual punitive damages.

19            COUNT II - VIOLATION OF EQUAL PROTECTION

20     42.   Plaintiff belongs to the legally protected class of

21 Jewish inmates desiring religiously suitable and religiously

22 necessary fragrance-infused oils for worship purposes.

23     43.   During the cause of action, Defendants discriminated

24 against Plaintiff by permitting one or more similarly situated

13

individuals within Plaintiff's protected class to purchase

fragrance-infused religious oils from an outside source.

44.   Through their actions or inactions, Defendants

subjected Plaintiff to discrimination, violating Plaintiff's

right to equal protection, as guaranteed by the Fourteenth

Amendment to the United States Constitution (enforceable through

42 U.S.C. § 1983); and as guaranteed by Article I, Paragraph

1, of the New Jersey Constitution (enforceable through N.J.

Stat. Ann. § 10:6-2d and 28 U.S.C. § 1367(a)).

45.   In violating Plaintiff's rights in the manner alleged,

Defendants acted with reckless or callous indifference, thus

exposing Defendants to individual punitive damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court

issue judgment against Defendants, as follows:

A.   declaring that Defendants violated Plaintiff's right

to religious freedom (as alleged in Count I) and Plaintiff's

right to equal protection (as alleged in Count II);

B.   injunctive relief requiring Defendants or their

successors to allow Plaintiff to purchase, from an outside

source, 64 ounces per month of religious anointment oils;

C.   compensatory damages in the amount of $1 million, to

be assessed against all Defendants jointly and severally;

D.   punitive damages in the amount of $5 million, to be

assessed against all Defendants qualifying therefor;

    E.   costs for bringing suit; and

    F.   such other relief as the Court deems proper.


Walter A. Tormasi

Dated:  March 16, 2022


## CERTIFICATION OF ENTIRE CONTROVERSY

Pursuant to L. Civ. R. 11.2, Plaintiff hereby certifies that this matter constitutes the entire controversy.

Walter A. Tormasi

Dated:  March 16, 2022


## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff hereby demands trial by jury regarding all factual issues.

Walter A. Tormasi

Dated:  March 16, 2022


## VERIFICATION

I hereby verify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the above facts are true and that the accompanying exhibits are genuine and authentic reproductions.

Walter A. Tormasi

Dated:  March 16, 2022